UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :  **MEMORANDUM**
                                                            :  **DECISION AND ORDER**
                                                            :
            - against -                                     :  16-cr-553 (BMC)
                                                            :
LEONID GERSHMAN, et al.,                                    :
                                                            :
                            Defendants.                     :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Before the Court is defendant Leonid Gershman's motion to sever his trial from that of his co-defendant, Aleksey Tsvetkov. Tsvetkov has affirmed that he would waive his Fifth Amendment privilege and testify on Gershman's behalf at a separate trial, provided that his trial precedes that of Gershman. Specifically, Tsvetkov affirms that "he has firsthand knowledge from which a jury could readily infer that Leonid Gershman was not involved in [an alleged arson]." For the reasons that follow, Gershman's motion is denied.

## DISCUSSION

The issue that Gershman bases his motion on is that at a joint trial, Tsvetkov may not testify, yet were he to do so, Gershman claims he would provide exculpatory testimony. Accordingly, the Court looks to the four non-exhaustive factors enunciated in United States v. Finkelstein, 526 F.2d 517 (2d Cir. 1975), to determine if severance in these circumstances is appropriate. Those factors are (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and

(4) the likelihood that the testimony would be subject to substantial, damaging impeachment. Id. at 524. Each of the Finkelstein factors weighs against severance.

First, Tsvetkov's offer to testify is conditional upon his trial occurring first, and the Government correctly notes that courts often find a conditional offer as suggesting "bad faith." See e.g., United States v. Bari, 750 F.2d 1169, 1177 (2d Cir. 1984) ("We think it unlikely that Daniel's co-defendants would actually testify at a separate trial. The offers to testify were expressly conditioned on Daniel being tried last, a condition which smacks of bad faith."). See also United States v. Gardell, No. S400CR.632, 2001 WL 1135948, at *9 (S.D.N.Y. Sept. 25, 2001) ("However, the requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first.") (internal quotations omitted). It strains credulity to imagine that Tsvetkov would testify if he were convicted (with a pending appeal likely), or if he were acquitted (because doing so could expose him to other charges dropped from the last indictment). Furthermore, Tsvetkov explicitly does not rule out the possibility of testifying at a joint trial; in other words, at this stage, it is not at all apparent that separate trials are required for Gershman to secure Tsvetkov's testimony.

Second, Tsvetkov's allegedly exculpatory testimony would be cumulative. For one thing, Gershman himself could testify as to the same subject matter. See e.g., United States v. Wilson, 11 F.3d 346, 354 (2d Cir. 1993) (Finding no abuse of discretion where a trial court held that "testimony would be cumulative, given that [the defendant] could have called any number of witnesses, including himself . . ."); United States v. Levy, No. S5 11 CR 62, 2013 WL 787913, at *2 (S.D.N.Y. Mar. 4, 2013) ("[C]ourts have discounted this showing under the second Finkelstein factor when defendants could otherwise testify as to such facts."); United States v. Schlegel, No. 06-CR-0550, 2009 WL 3837305, at *2 (E.D.N.Y. Nov. 16, 2009) ("[T]he Court

rejects Brooks' claim that he cannot provide testimony on his own behalf regarding certain aspects of the accounting fraud allegations because Brooks was not personally involved in valuing the inventory. Clearly, Brooks can provide information regarding his alleged lack of involvement with the inventory valuation."). For another, even if Gershman chose to not testify, he would still be able to cross-examine Government witnesses who testify to the subject matter that Tsvetkov indicated he would address. See e.g., United States v. Stella, No. S 90 CR. 95, 1990 WL 128918, at *7 (S.D.N.Y. Aug. 27, 1990) ("Pontarelli will, of course, be free to cross-examine the government witness in order to more fully develop the content and extent of Fred Stella's statements on the point.").

Third, the interests of judicial economy weigh heavily in favor of a joint trial. Indeed, "the cases are legion that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy." United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999). "[A]bsent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried." United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983). The Supreme Court articulated the reasons for this general preference in Richardson v. Marsh, 481 U.S. 200, 210 (1987):

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability–advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

There is no credible argument (and Gershman does not try to assert) that these considerations do not apply in full-force, here.

Turning to the fourth factor, the Court finds Tsvetkov would be subject to highly damaging impeachment were he to testify. As an initial matter, the Court credits the Government's position that Tsvetkov's proposed testimony would be vulnerable to attack as self-serving, inconsistent with cooperator testimony, and difficult to reconcile with physical evidence.

The Government also convincingly argues that Tsvetkov's overall credibility will be subject to serious challenge. The Court has previously ruled that even if Tsvetkov were to testify at his own trial, the Government could cross-examine him about his prior federal felony conviction. Were Tsvetkov to testify as a witness, the protections afforded by Federal Rule of Evidence 403 for questioning defendants would no longer shield him, and the Government would predictably attempt to broaden the scope of its examination by probing what it describes as Tsvetkov's "extensive criminal conduct."

Moreover, the Government indicates that it would question Tsvetkov about alleged recent lies, including: 1) to an immigration judge; 2) to this Court (to obtain bail and CJA funds); 3) in jail (by using other inmates' telephone accounts to avoid monitoring); and 4) to an insurance company to commit wire fraud. Each of these alleged lies has the potential to undermine his credibility.

Perhaps most damning, though, is the Government's reference to a recorded call from jail, on which Tsvetkov said: "Whatever I f------ said. So if I feel like f------ lying, I am gonna lie. I did not sign no f------ papers or anything like that. Ain't nobody gonna f------tell me when to lie or not to f------ lie." I have not previously seen such a bald-faced statement of a willingness to lie.

In the face of these significant vulnerabilities, it is clear that the fourth <u>Finkelstein</u> also inclines against justifying separate trials.

In addition to the Finkelstein factors weighing against severing Gershman's and Tsvetkov's trials, the Court is skeptical that Tsvetkov's testimony would be anywhere near as impactful as Gershman suggests. The Government notes that in his proffer, Tsvetkov "thoroughly incriminated Gershman in extortions, illegal gambling, the sole § 924(c) count . . . and critical Rule 404(b) evidence about Gershman's discharge of a weapon." Accordingly, the notion that Tsvetkov's testimony is powerfully exculpatory stands only upon the very thin reed of Tsvetkov not implicating Gershman in one charge out of many.

Far from being helpful, however, Tsvetkov's testimony might harm Gershman. The Government intends to argue at trial that "the essential nature of the illegal gambling conspiracy [with which Gershman and Tsvetkov are charged] was using force and threats to run a highly profitable poker game." The Government alleges that the two – along with others – conspired to burn down a building used by a rival gambling enterprise. To the extent that Tsvetkov plans to testify that he and Gershman did not assent to the plan to commit arson, Tsvetkov's testimony necessarily describes him and Gershman discussing with coconspirators a plan to use fire to deal with a rival criminal enterprise. Critically, Gershman and Tsvetkov "need not have agreed on all details of the conspiracy, so long as they agreed on the essential nature of the plan." United States v. Geibel, 369 F.3d 682, 689 (2d Cir. 2004) (internal quotation marks omitted). Furthermore, Gershman and Tsvetkov would logically be unable to argue that the arson was not a reasonably foreseeable product of the charged conspiracy while claiming that they heard of the plan, and refused to assent to it.

## CONCLUSION

Gershman's motion [297] is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
June 18, 2018